and Walker, 18-2064 and 18-2470. May it please the Court, Ms. Scott Coe, Ms. Lancaster, and Ms. Heller. My name is John Caccera. I represent Tyrone Walker. Could you speak right into the microphone? My name is John Caccera. I represent Tyrone Walker. I'm going to begin today by asking this Court to give me permission to file a supplemental brief in this case based on the 28J material that I filed, and that's based on the changed legal landscape over the last nine months in the Supreme Court. Mr. Walker has two convictions that form ostensibly the basis for his 924C sentence, which is by far the biggest sentence that he's under right now. One of those was a Hobbs Act conspiracy, Section 1951 conspiracy. The other one is a substantive 1951 robbery. Earlier this year, in United States v. Davis, the Supreme Court held that the residual clause of the 924C3 definition is unconstitutionally vague. On August 30th of this year, the Second Circuit in a case styled United States v. Barrett acknowledged that, based on Davis, a Hobbs Act conspiracy is no longer categorically a crime of violence, so it can no longer be the underlying predicate for the 924C case. Haven't we said in Hill, though, that this is the force clause and not the general? Yes, and there are three reasons why I would argue that you're not bound by that. Okay. We are bound by Hill. Well, humor me for a minute, if you would. No, this is not a place for humor. Okay. So we are bound by Hill. Okay. Hill said that to the defendant, to the appellant, you didn't bring us any real cases. All you brought us was hypotheticals. But I have real cases. I have two real cases that stand for the proposition that injury or threatened injury to property is not categorically a crime of violence. Mr. Hill didn't bring any of that. Secondly, we have supervening Supreme Court authority since Hill came down in the form of Stoeckling. In Hill, this phrase appears, and this is a cite from Johnson v. United States in 2010. The Supreme Court did not construe the Armed Criminal Career Offender Act to require a particular quantum of force to be employed or threatened to satisfy its physical force requirement. Stoeckling now gives us a quantum. So we have supervening, intervening Supreme Court authority. Stoeckling says this. It has to be more than offensive touching. It is force capable of causing physical pain or injury, and they relied on a concurrence by Justice Scalia in which he said it can be as small as hitting, slapping, shoving, biting, pinching, or hair pulling. And it includes the amount of force necessary to overcome a robbery victim's resistance. So, again, I'm not doubting that this Court feels bound by Hill, but I think this Court What you're saying is that Hill has been abrogated, or at least the relevant portion of Hill. Yes. Yes, I am. And also, again, Hill said you bring us hypotheticals. That's why you brought us. We're some real cases. The appellant in Hill didn't even argue that the force clause, that the amount of force necessary in that case Did he not address Hill and Barrett? Okay. Yes, they did. Didn't that come out just August 30th. It came out August 30th. Less than a month ago. Yes, but I'm arguing that's dicta as to Hill because the defendant in that case didn't argue that his Hobbs Act substantive case We said three weeks ago in Barrett that Hill had not been abrogated by what you described as the supervening Supreme Court cases. What did we mean? Okay. Why is that dicta? Because the appellant in that case, in Barrett, never said my Hobbs Act convictions are not violent crimes. He only said, he only argued his conspiracy case. This is a quote from the Eighth Circuit. I think the Second Circuit probably has similar wordings. It says, this panel is bound by precedent and cannot overrule an earlier decision by another panel. However, when an issue is not squarely addressed in a prior case law, we are not bound by precedent through stare decisis. And they cite 507 U.S. 619 of the Supreme Court. So that's what I'm saying. You're not bound by that because that's not an argument. The argument I'm raising and asking you to address and asking you to allow me to follow. We'll just have to see whether, in fact, Hill is as you describe it or is a broader holding. We'll just have to see that because, of course, we're not bound by dicta. But what is dicta and what is an actual holding is something we'll have to figure out. So I'll tell you what. We will grant your request for a very short reply brief not to extend over ten pages, a double space. Is that fair? But we'll also give the government an opportunity to respond briefly with the same page limitation. Will you give me some note as to when it's extended? If you could do that by within two weeks. No problem. Thank you. I yield back the response. Actually, you know what? Let me take that back. Do that within a week. By next Monday. Yes. It will be here. Thank you. May it please the Court. Meredith Heller on behalf of Appellant Kevin Walker. Kevin Walker's conviction was fatally infected by the admission of improper and grossly prejudicial evidence through the testimony of Mr. Clay. I might be very sympathetic to you, but doesn't the Carlton case pretty well deal with that? I mean, you know, the district court was sympathetic to you and felt bound by Carlton. And I do think that our tradition on this has been in a way that is, but that's what the law of the circuit is, isn't it? I think as the district court stated when it made its decision admitting this, that there is some real question here as to whether or not this really was modus operandi evidence or improper propensity evidence. And the court's reliance on the jury's reasoning that it would not go towards propensity as to whether or not Mr. Walker just robs delivery trucks doesn't really stand up. Because, of course, the jury is going to rely on, well, he's done it before or he's certainly said, talked about it before based on Mr. Clay's testimony. It's more than just delivery trucks, right? There is a, you know, people were, victims were being told to lay down in the back in the storage area of the truck. There was a police scanner in the getaway car. And there are certain things, they're all in broad daylight, some unusual specific factors that do seem to me to go to modus operandi. There were specific factors, but when you think about it, any robbery of a delivery truck would by definition be during delivery hours, during daylight. There is usually at least two people in the truck, so of course you'd have to have somebody control them by either bringing them in the back of the truck or holding a gun on them. Isn't this in the end exactly what is under our rulings in the discretion of a district court? Of saying, look, how much is this something that is relevant to what a jury ought to be able to use within limits? And how much is it unduly prejudicial? And sometimes you get district judges who don't talk about it, don't do the balance, don't think about it, but this court was really quite express about it, thought about it, and really did everything one could ask them. So isn't that just the situation in which we defer? My argument in this case is that while the district court did do everything as far as it went, their decision was ultimately incorrect. That they really found that this was not overly prejudicial, and I don't see how it could be but overly prejudicial. Are you arguing that we should say whether we think it is unduly prejudicial or whether the court below was acting within its range of discretion, whatever we might decide? I'm arguing that the court below abused its discretion in finding that this was admissible under either a modus operandi or... And just describe for me again why this was an abuse of discretion under a modus operandi rationale where your client specifically referenced Little Debbie delivery trucks. I mean, that is the detail that I think really grabbed Judge Rakoff's attention. It is highly unusual and very specific. Wouldn't you agree to describe Little Debbie? I've never heard of Little Debbie delivery trucks. Little Debbie delivery trucks? And those would be the targets. Would you agree with that? I would agree that that would be unusual, except there was some question as to whether or not in Mr. Clay's testimony, whether or not Mr. Walker did specifically refer to Little Debbie or just happened to be pointing out a truck that happened to be a Little Debbie. Well, that's a quibble that, you know, that's not for us and that's not what you're asking us to review. So what we have before us is the specific reference to these types of delivery trucks and the other details that Judge Park alluded to. Why was that? Why was it an abuse of discretion for the district court judge here to determine that given all these highly unusual, particularly the name of the delivery truck that was going to be targeted, facts, this was classic modus operandi? Why? Because I think that the court failed to understand exactly how prejudicial this testimony. Well, of course it's prejudicial. That's why the government wants to use it. Of course. I reserve the rest of my time. Thank you. Thank you. Good morning. May it please the court, my name is Jordan Estes and I represent the United States and I also represented the United States below. This court should affirm the judgment below for each defendant. Now, as to Mr. Tyrone Walker, we intend to address the argument in the reply brief that your honors have allowed us to file. I would just ask how long do we have to file that brief? How long do you need? I mean, just a few days. It doesn't sound like it's particularly complex. A few days is fine. It's like giving him a whole week, but I did that. A few days is fine, your honor. Three days?  Yes, your honor, we'll do that. So by Thursday. Yes, your honor. As to Mr. Kevin Walker, Judge Rakoff did properly exercise his discretion in admitting the statements that Kevin Walker made about this attempted delivery truck robbery. And just to address a few of counsel's points. First, as to prejudice, there was actually very little prejudice here. The trial testimony involved testimony about Mr. Walker's involvement in over a dozen armed robberies, many where guns were pointed at the victims, one where the victim was actually injured. What Judge Rakoff admitted were statements a year later about a plan to rob a Little Debbie truck that never even came to fruition. The robbery didn't happen. So in that context, these statements about an effort to rob a Little Debbie truck, which, as Judge Rakoff recognized, gave a very common sense inference to the jury that they could infer that he... How many witnesses were there in the second trial? As to the Little Debbie? As to the Little Debbie trucks. There was a single witness, Kyle Clay. This is Kyle Clay. Yes. How about all the robberies? How many witnesses were there? Your honor, the case in general involved about 45 witnesses. Many of those witnesses were victims who did not, could not recognize any of the particular robbers, so they described how the robberies actually took place. As to witnesses... Don't you agree that this creates an attitude in a jury that this guy had done an awful lot of crimes and whether he did this particular one, what the heck, he deserves to go to jail? I mean, realistically, isn't that what the prejudice is? That doesn't mean that that prejudice wins out over the probative effects, but just to say that there isn't much prejudice seems to me a little lighthearted. Your honor, I would respectfully disagree that this suggests that he committed a lot of crimes. His statements to Kyle Clay were very specific. He described the Little Debbie truck as an easy mark, and then he quickly came up with a plan as to how to rob that Little Debbie truck. He pointed at the cargo pants pockets of the delivery drivers and suggested that's where they kept their money. So I don't think this suggests that Mr. Walker was off committing lots of other sorts of crimes. It suggests that he had experience in robbing a particular food and beverage delivery truck. So I think in that context, the prejudice is minimal. Would you remind us how many witnesses actually identified him as a participant? His brother, Melvin Walker, was the key witness who identified him. There was also very compelling cell site testimony that put Kevin Walker's phone in the vicinity of over a dozen armed robberies that were scattered throughout Manhattan and the Bronx, and that evidence in particular was very compelling, showing that he was within a block or two of a robbery in 13 different robbery locations was, we submit, very overwhelming evidence of his guilt. Your Honors, unless there are any other questions, we respectfully request that the Court affirm the judgment for each defendant for the reasons articulated in our brief. Thank you. Thank you very much. Given that the Court has graciously granted my request to file a brief, I have no more argument. I'll put my argument in my brief. Of course, you're always free to file your papers well in advance of Monday. Thank you. I appreciate that. You're not going to take that offer, are you? Okay. May we be excused? Ms. Heller? Thank you, Your Honor. Just briefly, as Ms. Jordan-Esses pointed out somewhat obliquely, there were no eyewitnesses to Mr. Kevin Walker's involvement in these robberies. The sole witness to his involvement was through his brother's testimony and through Mr. Kyle Clay's testimony that he had mentioned hypothetically robbing a delivery truck before. As to whether or not these were very specific types of robberies, I really think that if we're looking at Mr. Walker as somebody who had committed these types of robberies, he would seem to have known that he did not get much money from any of these robberies. For the most part, drivers do not carry large quantities of cash in their pockets. In the most part, drivers do not have access to this money. So I think it was really very prejudicial and detrimental in proving that Kevin Walker was somebody who committed robberies as opposed to that Kevin Walker was somebody who specifically committed these robberies. Thank you. Thank you. Nicely argued on all sides. Thank you. Thank you very much. A well-reserved decision.